UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
TRACEY LEBBY,

                Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-4760 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Tracey Lebby brings this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), seeking judicial review of the Social Security Administration's ("SSA") denial of her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have cross-moved for judgment on the pleadings. (Dkts. 13, 18, 19.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.

**BACKGROUND**

**I.**     **Factual and Procedural Background**

Plaintiff has been diagnosed with bipolar disorder, depression, and psychosis/ schizophrenia. (Tr. 41, 484, 598.[1]) Plaintiff suffers from several severe symptoms, including visual and auditory hallucinations. (Tr. 415, 487.) In these hallucinations, Plaintiff reports visiting and receiving guidance from her dead mother, father, and brother. (*Id.*) During a hearing before the SSA, Plaintiff explained that the visual hallucinations happen daily or hourly depending on her location. (Tr. 45.) Regarding the auditory hallucinations, Plaintiff said she can hear voices at "any

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript.

1

minute." (*Id.*) Plaintiff also has a history of abuse both as a child and later by her ex-husband. (Tr. 486–87.) In 2007, Plaintiff suffered from a stroke, which caused her to be unconscious for a period of two days. (*Id.*) The stroke caused hemorrhaging in her brain that has resulted in significant difficulties concentrating, remembering, and thinking. (*Id.*)

Plaintiff has received mental health treatment at Brightpoint Health since 2013. (Tr. 474.) While Plaintiff's mental health treatment was initially intermittent, Plaintiff has seen psychiatric nurse practitioner ("NP") Veronica Ogula, PMHNP, DNP, BC, monthly since 2017/2018.[2] (Tr. 42, 598.) Plaintiff has also had less consistent psychotherapy sessions with Derek Caruso, LCSW. (Tr. 408–11, 420–23.) During the hearing before the Administrative Law Judge ("ALJ"), Plaintiff noted that she stopped therapy as the sessions did not provide any relief.[3] (Tr. 43.) In addition to those sessions, Plaintiff receives monthly home visits, which she indicates help ensure that she accomplishes her home tasks. (Tr. 42.) Plaintiff currently takes Zoloft, Remeron, Risperidone, and Hydroxyzine. (Tr. 325, 412, 428.) In addition to her mental health treatment, Plaintiff has periodically seen Dr. James Ho, an internal medicine specialist, at Brightpoint Health since August

---

[2] NP Ogula provides two opinions on Plaintiff's mental impairments. (Tr. 485–86, 597–602.) The June 2017 opinion is co-signed by Dr. Karamchand Rameshwar, a psychiatrist (Tr. 485); however, Dr. Rameshwar does not co-sign the August 2017 opinion (Tr. 597–602). Prior to the March 27, 2017 amendments to the SSA's regulations, an NP was not an "acceptable medical source" whose opinion needed to be considered by an ALJ. *Wider v. Colvin,* 245 F. Supp. 3d 381, 388–89 (E.D.N.Y. Mar. 29, 2017). However, in cases involving claims filed after March 27, 2017, such as this one, NPs are considered acceptable medical sources and thus ALJs must consider their opinions. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5845–46 (Jan. 18, 2017) ("We agree with the comments that supported our proposal to recognize APRNs [Advanced Practice Registered Nurses] as Acceptable Medical Sources ("AMSs") for purposes of our programs. . . . APRNs include four types of medical sources: Certified Nurse Midwife, NP, Certified Registered Nurse Anesthetist, and Clinical Nurse Specialist.").

[3] It is unclear from the record whether the therapy sessions Plaintiff referred to were conducted by Derek Caruso. (Tr. 43.)

2

2007 for issues related to her post-stroke recovery, hypertension, and eczema. (Tr. 418–19, 424–26, 502–04, 516–19, 610–15.)

Prior to filing for disability, Plaintiff worked as an office cleaner. (Tr. 298, 357.) On May 8, 2017, Plaintiff applied for DIB and SSI, claiming that she had been disabled since March 23, 2017, due to bipolar disorder, depression, psychosis/schizophrenia, stroke, hypertension, and eczema. (Tr. 10, 13.)

In connection with her DIB and SSI application, Plaintiff met with two consultative examiners in June/July 2017—one who assessed her mental impairments and one who assessed her physical impairments. On June 20, 2017, Plaintiff met with consultative examiner Dr. Toula Georgiou, a psychologist, who concluded that Plaintiff's mental impairments "may" impact her ability to maintain a regular schedule and "significantly interfere" with her ability to function on a daily basis. (Tr. 474–77.) On July 5, 2017, Plaintiff also met with consultative examiner Dr. Iqbal Teli, an internal medicine specialist, who determined that Plaintiff's alleged physical impairments did not cause any work-related restrictions. (Tr. 480–82.)

In addition to the consultative examiners, two non-examining experts provided medical opinions on Plaintiff's impairments. Dr. S. Hou concluded that Plaintiff's mental impairments caused mild to moderate limitations in key functioning areas. (Tr. 75–76, 80.) Dr. Hou supported his conclusions by referencing Dr. Georgiou's consultative examination report and Plaintiff's Daily Function Report (Tr. 80, *see* Tr. 275–88), noting that Plaintiff can cook and go to church and the library (Tr. 80). It does not appear that Dr. Hou had access to any records from Brightpoint Health, where Plaintiff had received all of her mental health treatment. (*See* Tr. 73–74.) The "Evidence of Record" does not affirmatively show any records were received from Brightpoint Health nor does Dr. Hou cite any treatment records. (*Id.*) Additionally, Dr. Hou's report notes

that there were no medical opinions from any treating source.  (Tr. 80 ("There is no indication that there is a medical opinion from any medical source.").)  In addition to Dr. Hou, Dr. S. Choi, the other non-examining expert, determined that Plaintiff's physical impairments did not create any work-related limitations.  (Tr. 76–78.)

Plaintiff's claims for DIB and SSI were initially denied on July 11, 2017.  (Tr. 10.)  Plaintiff then requested a hearing before an ALJ.  (*Id.*)  On December 28, 2018, Plaintiff met with consultative examiner Dr. Pavlos Kymissis, a psychiatrist.  (Tr. 489–93.)  Dr. Kymissis concluded that Plaintiff had several "moderate-to-marked" limitations due to her mental impairments.  (Tr. 492.)  Additionally, Dr. Kymissis estimated that Plaintiff would likely be absent from work more than three times per month due to her impairments.  (Tr. 493.)

On June 21, 2019, Plaintiff appeared with her attorney John Moran for a video hearing before ALJ Scott Johnson.  (Tr. 27–58.)  During the hearing, vocational expert Janice Hastert testified.  (Tr. 53–58.)  By decision dated July 26, 2019, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") from March 23, 2017, her alleged onset date, through the date of the ALJ's decision.  (Tr. 10–25.)  Plaintiff's request for a review of the ALJ's decision was denied by the Appeals Council on August 6, 2020.  (Tr. 1–3.)  Thereafter, Plaintiff timely commenced this action.[4]

---

[4] According to 42 U.S.C. § 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to [her] of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at

**II.     The ALJ's Decision**

In evaluating disability claims, an ALJ must adhere to a five-step inquiry. The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If the answer is yes, the plaintiff is not disabled. *Id.* If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* § 416.920(a)(4)(ii). An impairment is severe when it "significantly limit[s] [the plaintiff's] physical or mental ability to do basic work activities." *Id.* § 416.922(a). If the impairment is not severe, then the plaintiff is not disabled.[5] *Id.* § 416.920(a)(4)(ii). But if the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 404.1520(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App'x 1. If the ALJ determines at step three that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* § 404.1520(a)(4)(iii). On the other hand, if the plaintiff does not have

---

*3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). The final decision was issued August 6, 2020 (Tr. at 1), and the Complaint was filed on October 5, 2020 (Complaint, Dkt. 1), 56 days after the presumed receipt date of the decision, rendering this appeal timely.

[5] In cases involving mental health, such as this one, a mental health impairment is severe when the Plaintiff has either one extreme or two marked limitations in a broad area of functioning, which include understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04(B). An "extreme limitation" is defined as the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* A "marked limitation" means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. *Id.*

5

a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing to steps four and five. To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 404.1545(a)(1). The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 404.1520(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 23, 2017. (Tr. 12.) At step two, the ALJ determined that Plaintiff had the "following severe impairment: bipolar disorder, depression, and psychosis/schizophrenia." (Tr. 13.) The ALJ found that Plaintiff's alleged physical impairments were not sufficiently severe as to satisfy the step two criteria. (*Id.*) At step three, the ALJ found that Plaintiff's (mental) impairments did not meet or medically equal any of the listed impairments in the Listings. (Tr. 13–15.) The ALJ then determined Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. She is able to carry out detailed but uninvolved instructions in the performance of simple, routine, and repetitive tasks; in a work environment free of fast[-]paced production requirements; involving only simple, work-related decisions; with few, if any, work place changes. She can have occasional interaction with the public. She can have frequent interaction with coworkers and supervisors.

(Tr. 15.) At step four, the ALJ concluded that Plaintiff could perform her past work as an office cleaner. (Tr. 18.) Finally, at step five, the ALJ found that there were other jobs Plaintiff could

6

perform, such as boring machine tender, riveting machine operator, and casting machine tender. (Tr. 19–20.)  The ALJ thus concluded that Plaintiff was not disabled.  (*Id.*)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits.  42 U.S.C. § 405(g).  In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera*, 697 F.3d at 151.  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (internal quotation marks and brackets omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Id.*  However, "it is up to the agency, and not this [C]ourt, to weigh the conflicting evidence in the record."  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.  42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (*per curiam*).

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and fails to apply the relevant legal standards.  (Plaintiff's Memorandum of Law In Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 14, at 8–22.)  For the reasons set forth below, the Court grants Plaintiff's motion and remands to the SSA because the ALJ failed to adequately develop the record and provided an RFC that was not supported by substantial

7

evidence. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *13–27 (E.D.N.Y. Sept. 28, 2017) (remanding after court determined that the record had not been fully developed and that the RFC was not supported by substantial evidence). Additionally, on remand, the ALJ should further explain his credibility determinations, including his reliance on evidence of daily functioning and Plaintiff's "conservative" treatment. *Hodge v. Comm'r of Soc. Sec.*, No. 20-CV-769 (AMD), 2020 WL 7262846, at *4 (E.D.N.Y. Dec. 10, 2020) ("On remand, the ALJ should also include a specific credibility determination, explain how she balanced the various factors, and identify any inconsistencies between the plaintiff's testimony and the rest of the record.").

I.     **Failure to Develop the Record**

"The ALJ's failure to develop the record is a threshold issue, because the Court cannot rule on whether the ALJ's decision regarding [Plaintiff's] functional capacity was supported by substantial evidence if the determination was based on an incomplete record." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016) (internal quotation marks omitted); *accord Alvarez v. Comm'r of Soc. Sec.*, No. 14-CV-3542 (MKB), 2015 WL 5657389, at *14 (E.D.N.Y. Sept. 23, 2015). It is well-established in the Second Circuit that an ALJ presiding over a social security hearing must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009)). This obligation exists "even where, as here, the claimant is represented by counsel." *Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510 (PGG) (HBP), 2015 WL 5472934, at *18 (S.D.N.Y. Sept. 17, 2015) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). Furthermore, even though Plaintiff did not raise the issue, "the Court must independently consider whether the ALJ failed to satisfy his duty to develop

the record." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10 (S.D.N.Y. Aug. 6, 2021) (collecting cases).

Here, the weight the ALJ assigned to the different medical opinions regarding Plaintiff's mental impairments indicates that the ALJ should have further developed the record. While the ALJ considered the opinions of NP Ogula, Plaintiff's treating psychiatric nurse, Drs. Kymissis and Georgiou, consultative examiners, and Dr. Hou, a non-examining expert, the ALJ found that only Dr. Hou's opinion was persuasive and consistent with the RFC. (Tr. 17–18.) The ALJ determined that all other medical opinions were unpersuasive due to "vagueness" and inconsistencies with the record. (*Id.*) While there is no affirmative duty to resolve all inconsistencies in the record, the ALJ has a duty to develop the record if there exists "obvious gaps." *Rusin v. Berryhill*, 726 Fed. App'x 837, 840–41 (2d Cir. 2018) ("[T]he ALJ was under no obligation to recontact [the plaintiff's treating physician] where there were no obvious gaps in the administrative record and the ALJ possessed [the plaintiff's] complete medical history."); *Micheli v. Astrue*, 501 Fed. App'x 26, 29–30 (2d Cir. 2012); *Rosa*, 168 F.3d at 79–80, 82–83. While obvious gaps in the record may include missing medical evidence, inconsistencies or vague opinions can also create a duty to further develop the record. *Madera v. Comm'r of Soc. Sec.*, No. 20-CV-1459 (PKC), 2021 WL 4480656, at *6–8, 10 (E.D.N.Y. Sept. 30, 2021) (remanding because of the ALJ's determination that a consultative examiner's opinion was "vague"); *Lee v. Saul*, No. 19-CV-9451 (CS) (JCM), 2020 WL 5362619, at *14 (S.D.N.Y. Sept. 8, 2020) (adopting report and recommendation) ("Although [the treating physician's] assessments setting forth [plaintiff's] functioning levels were brief, and arguably vague, the appropriate solution was not to reject the opinions contained therein on that basis, but rather to recontact [the treating physician] in an effort to have him clarify any ambiguities.").

9

The record contains two medical opinions submitted by NP Ogula, Plaintiff's treating psychiatric nurse. In June 2017, NP Ogula found that Plaintiff would be unable to work for at least 12 months due to her bipolar disorder and depression. (Tr. 484–85.) The ALJ determined this opinion was not persuasive because it was "vague," did not provide details to support the conclusion, and was "not consistent with the level of treatment" Plaintiff had received. (Tr. 18.) NP Ogula provided a more detailed opinion in August 2017, again concluding that Plaintiff's mental impairments significantly affect her ability to work. (Tr. 597–602.) NP Ogula concluded that Plaintiff had "marked" limitations in several areas, including her abilities to understand and remember detailed instructions, carry out detailed instructions, and perform at a consistent pace without rest periods of unreasonable length or frequency. (Tr. 601.) The medical opinion also noted that Plaintiff had several "moderate-to-marked" limitations, including with her abilities to remember locations and work-like procedures, maintain attention and concentration for extended periods of time, complete a workday without interruptions from psychological symptoms, respond appropriately to workplace changes, and make plans independently. (*Id.*) Based on the treating relationship, NP Ogula provided a list of symptoms to support her assessment, including depressed mood, persistent or generalized anxiety, difficulty thinking or concentrating, hallucinations, poor recent and remote memory, and intense and unstable interpersonal relationships. (Tr. 599.) Finally, NP Ogula noted that Plaintiff was likely to miss work more than three times per month due to her mental impairments and treatment. (Tr. 602.) Yet, the ALJ determined that NP Ogula's opinion was not persuasive because she "did not provide a detailed narrative to support her conclusions" and because the findings were inconsistent with Plaintiff's level of treatment. (Tr. 18.)

Dr. Georgiou provided a medical opinion on Plaintiff's mental health impairments after a one-time consultative examination on June 20, 2017. (Tr. 474–77.) Dr. Georgiou noted sleep and appetite issues, and several other symptoms, including dysphoric moods, crying spells, and concentration difficulties. (Tr. 474.) The opinion also noted that Plaintiff suffers from auditory hallucinations, where she speaks with her deceased relatives, which occurs approximately three times per week. (*Id.*) Dr. Georgiou concluded that Plaintiff "may have difficulties maintaining a regular schedule, having to regulate her emotions and making work-related decisions," and that her mental impairments may "significantly interfere" with her "ability to function on a daily basis." (Tr. 476.) The ALJ determined that Dr. Georgiou's opinion was not persuasive as it was "vague," "conclusory," not supported by a narrative, and inconsistent with Plaintiff's level of treatment. (Tr. 18.) The ALJ also noted that "[Dr. Georgiou's] opinion is inconsistent with his own examination report as he did not document any significant deficits in her functioning." (*Id.*)

Dr. Kymissis conducted a one-time psychiatric evaluation of Plaintiff in December 2018. (Tr. 486–93.) Along with his opinion, Dr. Kymissis submitted a detailed summary of Plaintiff's medical history. (Tr. 486–87.) Dr. Kymissis concluded that Plaintiff had "moderate-to-marked" limitations in her abilities to understand and remember detailed instructions, carry out detailed instructions, sustain an ordinary routine without supervision, complete a workday without interruptions from psychological symptoms, perform at a consistent pace without rest periods of unreasonable length or frequency, respond appropriately to workplace changes, and make plans independently. (Tr. 492.) In support of his conclusions, Dr. Kymissis noted a host of symptoms, including depressed mood, manic syndrome, obsessions or compulsions, suicidal ideation, difficulty thinking or concentration, poor memory, paranoia, recurrent panic attacks, social withdrawal or isolation, and hallucinations. (Tr. 490.) Dr. Kymissis also indicated, similar to NP

11

Ogula, that Plaintiff was likely to miss more than three days of work per month due to her impairments and treatment. (Tr. 493.) The ALJ found Dr. Kymissis's opinion to be unpersuasive as it was "not consistent with [Plaintiff's] treatment history . . . [and] not consistent with the examination findings that showed no significant ongoing limitations in her mental health functioning."[6] (Tr. 18.)

After determining that the medical opinions of all examining and treating experts were not persuasive due to vagueness,[7] inconsistencies with Plaintiff's conservative treatment, and/or being inadequately corroborated by a supporting narrative, the ALJ determined that non-examining expert Dr. Hou was the only persuasive opinion regarding Plaintiff's mental impairments. (Tr. 17.) As discussed above, Dr. Hou did not personally examine Plaintiff and did not appear to have access to Plaintiff's treatment records. Additionally, the opinion makes no reference to any other evidence aside from Plaintiff's Function Report and Dr. Georgiou's one-time examination, which also does not cite to any treatment records or medical opinions from treating sources. (Tr. 80; 474–77.) Although relying on Dr. Georgiou's examination, Dr. Hou found that Plaintiff's

---

[6] The Commissioner argues that Dr. Kymissis did not support his findings given that he "put a slash through the question asking for clinical findings that support his assessment." (Defendant's Cross-Motion for Judgment on the Pleadings ("Def.'s Mem."), Dkt. 18-1, at 17–18.) The Second Circuit has emphasized that ALJs should look to the substance, rather than the form of a medical opinion. *Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022) ("[W]e take this occasion to reassert and clarify that the nature of an ALJ's inquiry in disability factfinding turns on the substance of the medical opinion at issue—not its form . . . ."). Here, Dr. Kymissis provided a detailed, two-page summary of Plaintiff's medical history and identified numerous symptoms to support his findings. (Tr. 486–86, 490.) The Commissioner's over-reliance on a marking on a form, as opposed to a substantive multi-page narrative, is the exact "form over substance" approach that courts have cautioned against.

[7] The Court does not discuss the opinion of Drs. S. Choi or Iqbal Teli, since both discussed Plaintiff's physical rather than mental health impairments, which were less relevant to the ALJ's findings and thus this decision. However, on remand, the ALJ should consider these opinions and the other medical evidence relating to Plaintiff's physical impairments, which might also support a finding of a disability.

impairments affected her ability to function less than Dr. Georgiou did, concluding that Plaintiff only had mild and moderate impairments in key functioning areas. (Tr. 78–80.) The Commissioner and the ALJ note that Dr. Hou's opinion is supported by a "detailed narrative citing the evidence" (Defendant's Cross-Motion for Judgment on the Pleadings ("Def.'s Mem."), Dkt. 18-1, at 21; Tr. 17); however, the opinion merely notes that Plaintiff does not have psychosis, has fair insight and judgment, can perform self-care (such as cooking), and can go to the library and church. (Tr. 80.)

The ALJ's evaluation of the medical opinions that were before him suggests a further need to develop the record and resolve the "obvious gaps" created by the "vague," "unsupported," and "inconsistent" medical opinions.[8] *Rusin*, 726 Fed. App'x at 840–41. First, in determining that none of the experts who had personally examined Plaintiff provided opinions that were supported by a "detailed narrative" nor their own evaluations, the ALJ had a duty to develop the record and resolve these obvious gaps. *McGill v. Saul*, No. 18-CV-6430 (PKC), 2020 WL 729774, at *4 (E.D.N.Y. Feb. 13, 2020) ("[S]ince the ALJ deemed the treating physicians' opinions lacking in support, the ALJ should have sought clarification from them regarding the deficiencies she perceived in their opinions."). Second, the ALJ's finding that Dr. Georgiou's opinion was "vague" and inconsistent required further action from the ALJ to develop the record, such as recontacting Dr. Georgiou for additional information. *Madera*, 2021 WL 4480656, at *6 ("[T]he Court nonetheless finds that given the ALJ's own identification of [consultative examiner] Georgiou's

---

[8] The Commissioner correctly notes that the "treating physician rule" is no longer applicable to disability claims filed after March 27, 2017, such as this one, and thus the ALJ and Commissioner have greater flexibility in weighing medical opinions on the record. (Def.'s Mem., Dkt. 18-1, at 16.) However, this increased flexibility in weighing evidence does not relieve ALJs from their duty to develop the record. *See, e.g.*, *Alfonso v. Comm'r of Soc. Sec.*, No. 20-CV-03914 (LDH), 2022 WL 219575, at *7 (E.D.N.Y. Jan. 20, 2022).

13

opinion as 'vague,' and . . . not wholly contradicted by, or inconsistent with, Plaintiff's medical records, the ALJ should have sought clarification from Dr. Georgiou before rendering his decision as to Plaintiff's RFC."); *Merriman*, 2015 WL 5472934, at *18 ("I conclude that the ALJ's rejection of [the one-time examiner's] opinion, at least in part, without first attempting to clarify gaps in the record constituted legal error and grounds for remand."). This is especially important in light of the Commissioner's argument that part of the opinion of Dr. Georgiou, who provided his evaluation at the behest of the SSA, was not a medical opinion as defined in 20 C.F.R. §§ 404.1513(a)(2). (Def. Mem., Dkt. 23-1, at 20–21.) While the Commissioner argues that a consultative examiner is not required to provide a medical opinion, and therefore the ALJ had no duty to follow up for additional information (*id.*), the fact that all examining experts were deemed unpersuasive created an obvious gap in the record that required further development.

**II.     The ALJ's Mental RFC Finding Is Not Supported by Substantial Evidence**

While a failure to develop the record is sufficient to remand, the Court further finds that the ALJ's mental RFC finding is not supported by substantial evidence. An ALJ's RFC determination must be supported by substantial evidence. *Talavera*, 697 F.3d at 151. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (quoting *Richardson*, 402 U.S. at 401 (internal quotation marks and brackets omitted)). In determining whether the Commissioner's findings were based on substantial evidence, the Court must ascertain that the agency considered all evidence in reaching its findings. 20 C.F.R. § 404.1520(a)(3). Moreover, the Court "is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417. However, the Court is mindful that "it is up to the agency, and not this [C]ourt, to weigh the conflicting evidence in the record." *Clark*, 143 F.3d at 118. In any case, if there is substantial evidence in the record to

14

support the Commissioner's findings as to any fact, they are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki*, 729 F.3d at 175–76.

Medical records alone cannot provide substantial evidence for an RFC determination; rather, an "ALJ's RFC determination must be supported by a medical *opinion*" and that opinion must have been "in the record at that time." *Pearson v. Comm'r of Soc. Sec.*, No. 20-CV-3030 (AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021) (emphasis added). Here, the ALJ evaluated the opinions of NP Ogula, Plaintiff's treating psychiatric nurse, Drs. Georgiou and Kymissis, consultative examiners, and Dr. Hou, a non-examining expert. (Tr. 17–18.) As discussed above, the ALJ found NP Ogula, Dr. Georgiou, and Dr. Kymissis to be unpersuasive. (*Id.*) At the same time, the ALJ found Dr. Hou's opinion, which was based almost entirely on Dr. Georgiou's one-time examination and Plaintiff's Function Report, to be persuasive, because the ALJ determined that it was consistent with and supported by the record. (*Id.*) Therefore, despite years of mental health treatment that Plaintiff had received from professionals at Brightpoint Health, the ALJ conformed his findings on Plaintiff's mental impairments exclusively to a non-examining expert who relied largely on a single-day examination performed by Dr. Georgiou. That was error.

The Second Circuit has "frequently cautioned" ALJs not to rely too heavily on consultative examiners and non-examining experts, particularly in the context of mental illness where "a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019). For that reason, Dr. Hou's opinion could not provide substantial evidence for the ALJ's RFC determination as a matter of law, especially where it does not appear Dr. Hou had access to any medical evidence from Plaintiff's treating sources. *Avila v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-1360 (ER) (DF), 2021 WL 3774317, at *20

15

(S.D.N.Y. Aug. 9, 2021) ("Even where a non-examining opinion is properly afforded some weight, it, alone, cannot be considered substantial evidence."), *report and recommendation adopted*, 2021 WL 3774188 (S.D.N.Y. Aug. 25, 2021); *Jones v. Comm'r of Soc. Sec.*, No. 10-CV-5831 (RJD), 2012 WL 3637450, at *3 (remanding after court determined a non-examining physician's opinion was not substantial evidence given that the physician had limited access to treatment records); *see also Ferraro v. Saul*, 806 Fed. App'x 13, 16 (2d Cir. 2020) ("[A]lthough the ALJ noted that [psychiatric consultative examiner] Loomis's opinion was supported by that of [a consultative expert], [that expert] did not examine [plaintiff], and indeed seems to have formed an assessment based in part on Loomis's notes.").

By choosing to rely exclusively on Dr. Georgiou's opinion over those of Plaintiff's treating professionals and other consultative experts, such as Dr. Kymissis—based on the ALJ's own assessment that the former was consistent with the medical record whereas the latter were not—the ALJ impermissibly substituted his own judgment for that of the medical experts. *McBrayer v. Sec'y of Health and Hum. Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."). The ALJ's erroneous approach to weighing the various medical opinions regarding Plaintiff's mental health impairments eroded the support for his RFC determination.

In addition to Dr. Georgiou's opinion, the ALJ based his RFC determination on what he viewed as Plaintiff's "conservative treatment" and her ability to perform basic personal tasks, such as cooking and cleaning. (Tr. 17–18.)  This too was error.  First, while evidence of daily functioning can be used to inform an RFC, the RFC must be supported by an adequate medical opinion. *See Pearson*, 2021 WL 3373132, at *4. Second, the ALJ's determination that Plaintiff's treatment was "conservative" was an impermissible substitution of his opinion for that of medical

16

experts. *Shaw v. Chater*, 221 F.3d 126, 134–35 (2d Cir. 2000) ("Neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion. Essentially, the ALJ and trial court imposed their notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." (citations omitted)). Third, even if the ALJ is correct in his classification of Plaintiff's treatment as "conservative" (which the Court questions, given Plaintiff's medication regimen over the course of six to seven years), such treatment does not constitute substantial evidence for the RFC. *Kirby v. Saul*, No. 20-CV-02270 (FB), 2021 WL 4197264, at *3 (E.D.N.Y. Sept. 15, 2021) ("[N]either Kirby's ability to perform personal tasks—like showering, getting dressed, and going to doctor's appointments—her 'conservative' treatment choices, nor her decision to return to work after a period of disability amounts to substantial evidence.").

In sum, because none of the examining expert opinions support the ALJ's RFC determination, the lone non-examining expert opinion cannot be considered substantial evidence for that RFC, nor can "conservative" treatment or basic daily functioning constitute substantial evidence. Thus, there is no substantial evidence to support the ALJ's RFC determination, and remand is necessary. *Pearson*, 2021 WL 3373132, at *4 ("[A]n ALJ's RFC determination must be supported by a medical opinion in the record at that time."); *Avila*, 2021 WL 3774317, at *20 ("Even where a non-examining opinion is properly afforded some weight, it, alone, cannot be considered substantial evidence."); *Kirby*, 2021 WL 4197264, at *3 (remanding after finding evidence of conservative treatment and basic daily functioning cannot constitute substantial evidence).

### III. The ALJ's Insufficient Credibility Determination and Explanations

In addition to adequately developing the record in this case, on remand, the ALJ should further explain his credibility determinations, including his reliance on evidence of daily

functioning and Plaintiff's "conservative" treatment. (Tr. 16.) While the ALJ and Commissioner can consider a claimant's daily activities in assessing the intensity and persistence of a claimant's symptoms, 20 C.F.R. § 404.1529(c)(3)(i), "a claimant need not be an invalid to be found disabled," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

Here, the ALJ noted several activities Plaintiff can allegedly perform, including preparing simple meals, attending church, cleaning her room, and taking public transportation. (Tr. 16.) Importantly, during the oral hearing, Plaintiff noted that monthly home visits are part of her treatment. (Tr. 42.) When asked what the purpose of the visits are, Plaintiff responded that they are "to make sure that I do laundry, I'm cooking, I'm functioning." (*Id.*) Despite the ALJ's consistent citation to daily functioning as support for his findings, the ALJ did not inquire further into whether these visits were responsible for Plaintiff's ability "to maintain her own self-care tasks and grossly normal activities of daily living." (Tr. 14.) Furthermore, portions of the oral hearing suggest that Plaintiff's functioning has changed at least somewhat over the two years from what was documented in the 2017 Function Report. (*Compare* Tr. 48 (plaintiff states she stopped going to the library "[a] long time ago"), *with* Tr. 279 (plaintiff reported that she goes to the library on a regular basis).) Finally, while the ALJ discussed Plaintiff's hallucinations, there was no discussion of whether these "quite often" occurrences impact her ability to perform the listed functions. (Tr. 44–45.) While the ALJ discussed the hallucinations in his opinion, he merely observed that Plaintiff's providers "never noted that she was responding to internal stimuli" nor "exhibited significant distractibility." (Tr. 17.) The ALJ's failure to further examine the impact Plaintiff's treatment and hallucinations have on her ability to perform daily tasks calls the ALJ's credibility analysis into questions. *Hankerson v. Harris*, 636 F.2d 893, 895–96 (2d Cir. 1980) ("[I]t was particularly important that the ALJ explore these symptoms with plaintiff so that the

18

ALJ could effectively exercise his discretion to evaluate the credibility of the claimant in order to arrive at an independent judgment . . . regarding the true extent of the pain alleged." (internal quotation marks, brackets, and ellipses omitted)).

In addition to Plaintiff's daily functions, the ALJ noted "the conservative nature of the treatment she has required is not suggestive of her having disabling limitations." (Tr. 16.) Social Security Rulings state that "the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints." SSR 16-3p, 2017 WL 5180304, at *9. The rule goes on to say "[w]e will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* Here, the ALJ did not perform this two-step analysis and instead merely noted Plaintiff's medication regimen, therapy, and lack of emergency care were indicative of a conservative treatment. (Tr. 16.) Given the nature of mental impairments, courts have cautioned ALJs to not "draw[] negative inferences" from a Plaintiff's failure to seek more aggressive treatment. *Cooper v. Saul*, 444 F. Supp. 3d 565, 580–81 (S.D.N.Y. 2020). Thus, on remand, the ALJ should "include a specific credibility determination, explain how []he balanced the various factors, [including Plaintiff's daily activities], and identify any inconsistencies between the plaintiff's testimony and the rest of the record."[9] *Hodge*, 2020 WL 7262846, at *4; *see also Calo v. Comm'r of Soc. Sec.*,

---

[9] The factors to be considered in assessing a claimant's credibility are:

> (1) the claimant's daily activities, (2) the duration, location, frequency and intensity of the claimant's pain, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medications that the claimant takes, (5) any treatment, other than medication, that the claimant has received, (6) any other measures that the claimant employs to relieve the pain, and (7) other factors

19

No. 20-CV-3559 (AMD), 2021 WL 3617478, at *4–5 (E.D.N.Y. Aug. 16, 2021); *Woodcock v. Comm'r of Soc. Sec.*, 287 F. Supp. 3d 175, 176 (E.D.N.Y. 2017); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## CONCLUSION

For the reasons explained above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum & Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 24, 2022
Brooklyn, New York

---

concerning the claimant's functional limitations and restrictions as a result of the pain.

*Calo v. Comm'r of Soc. Sec.*, No. 20-CV-3559 (AMD), 2021 WL 3617478, at *4 (E.D.N.Y. Aug. 16, 2021) (citing 20 C.F.R. § 404.1529(c)(3)(i)–(vii)).